———————————

No. 09-15448

———————————

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

———————————

JACOB DOE, a minor, by his parents and
next friends, James and Joyce Doe, et al.,

Plaintiffs/Appellants,

v.

KAMEHAMEHA SCHOOLS/BERNICE
PAUAHI BISHOP ESTATE, et al.,

Defendants/Appellees.

———————————

On Appeal from the United States District Court
for the District of Hawaii
Hon. J. Michael Seabright, District Judge

———————————

**APPELLANTS' PETITION FOR REHEARING EN BANC**

———————————

David B. Rosen
Law Office of David B. Rosen, ALC
810 Richards Street, Suite 880
Honolulu, Hawaii 96813
Telephone: (808) 523-9393
Facsimile: (808) 523-9595
E-Mail:    rosenlaw@hawaii.rr.com

Eric Grant
Attorney at Law
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833
Facsimile: (916) 691-3261
E-Mail:    grant@eric-grant.com

Counsel for Plaintiffs/Appellants

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT PURSUANT TO FRAP 35(b)(1)(A) . . . . . . . . . . . . . . . . . . . . . . 1

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      A.    Reasonableness of Plaintiffs' Fears . . . . . . . . . . . . . . . . . . . . . . . . . 5

      B.    Vulnerability and Lack of Prejudice . . . . . . . . . . . . . . . . . . . . . . . . 12

      C.    Public Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page**

## Cases

*D.C. v. R.R.*,
  No. B207869, 2010 Cal. App. LEXIS 340
  (Mar. 15, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Doe v. Advanced Textile Corp.*,
  214 F.3d 1058 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Doe v. Kamehameha Schools/Bernice Pauahi Bishop*
  *Estate*, 295 F. Supp. 2d 1141 (D. Haw. 2003),
  *aff'd*, 470 F.3d 827 (9th Cir. 2006) (en banc),
  *cert. dismissed*, 550 U.S. 931 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*John Doe #1 v. Reed*,
  586 F.3d 671 (9th Cir.),
  *stay granted*, 130 S. Ct. 486 (2009),
  *cert. granted*, 130 S. Ct. 1133 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Newdow v. Rio Linda Union School District*,
  No. 05-17257, U.S. App. LEXIS 5201
  (9th Cir. Mar. 11, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-15

*Planned Parenthood of Columbia/Willamette,*
  *Inc. v. American Coalition of Life Activists*,
  290 F.3d 1058 (9th Cir. 2002) (en banc),
  *cert. denied*, 539 U.S. 958 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 11

*Poradisova v. Gonzales*,
  420 F.3d 70 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Hinkson*,
  585 F.3d 1247 (9th Cir. 2009) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**Page**

*United States v. Lincoln*,
   403 F.3d 703 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Sutcliffe*,
   505 F.3d 944 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## Statute

42 U.S.C. § 1981 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## STATEMENT PURSUANT TO FRAP 35(b)(1)(A)

The panel decision conflicts with at least two decisions of this Court—namely, *Doe v. Advanced Textile Corp.*, 214 F.3d 1058 (9th Cir. 2000) ("*Advanced Textile*"); and *Planned Parenthood of Columbia/Willamette, Inc. v. American Coalition of Life Activists*, 290 F.3d 1058 (9th Cir. 2002) (en banc), *cert. denied*, 539 U.S. 958 (2003) ("*Planned Parenthood*")—and consideration by the full Court is therefore necessary to secure and maintain uniformity of the Court's decisions.

## INTRODUCTION

Plaintiffs are four non-Hawaiian children (the "Doe children") who challenge the Hawaiians-only admissions policy of Defendant Kamehameha Schools. Because the plaintiff and his attorney in a prior, similar case were the subject of calls to "break every bone" in their bodies and "make the bastards suffer," the Doe children sought to proceed anonymously. For no apparent legitimate reason, Defendants objected. Despite the documented evidence of violent threats related to Kamehameha's admissions policy and racially-motivated violence against children in Hawaii—highlighted by the direct telephonic threat to Plaintiffs' counsel that "everyone is going to know who your clients are . . . both you *and your haole clients* can get the lickins' you deserve . . . *you fucking haoles*"—the district court held that Plaintiffs' parents did not *reasonably* fear for the safety of their children. The court accordingly denied Plaintiffs' motion to proceed anonymously and dismissed their complaint with prejudice.

- 1 -

A panel of this Court affirmed in a published opinion ("Panel Op."). As elaborated herein, that result cannot be reconciled with *Advanced Textile* in light of the documented likelihood of physical harm to the Doe children, along with the evident lack of prejudice to Defendants and the public interest in having this important case decided on the merits. Moreover, the district court's finding (and panel's affirmance thereof) that the Doe parents do not *reasonably* fear for their children what the panel rightly called "undoubtedly severe" threats of physical retaliation cannot be squared with the contextual approach to threats articulated in *Planned Parenthood*.

This case is important. Unpopular plaintiffs, especially child plaintiffs in civil rights cases, should be permitted to proceed anonymously when threatened—unless there is a good reason otherwise. There is no good reason here. An essentially identical case against the very same Defendants was litigated on an anonymous basis all the way from the district court to this Court (both a three-judge panel and a fifteen-judge en banc court) to the Supreme Court, and no judge even commented on the plaintiff's identity. *See Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate*, 295 F. Supp. 2d 1141 (D. Haw. 2003), *aff'd,* 470 F.3d 827 (9th Cir. 2006) (en banc), *cert. dismissed*, 550 U.S. 931 (2007) ("*Doe I*"). But in the present case, Defendants insisted that Plaintiffs reveal their identities not only to Defendants' counsel under a protective order (to which Plaintiffs readily assented) but also to the general public, suggesting that Defendants were cynically aiming for the very result they achieved:

to scare the children into dismissal rather than defend the merits of their race-based admissions policy. The Court should take this case en banc to overturn the panel's dangerous decision and to clarify the law of anonymous filing in this Circuit.

## STATEMENT OF RELEVANT FACTS

In August of 2008, the Doe children sued Defendants Kamehameha Schools/ Bernice Pauahi Bishop Estate and its five Trustees (collectively, "KSBE") in the District Court for the District of Hawaii, challenging Kamehameha Schools' Hawaiians-only admissions policy under 42 U.S.C. § 1981. The complaint acknowledged that this Court had "rejected a virtually identical claim in [*Doe I*]," but stated Plaintiffs' intention "to have that ruling overturned in the Supreme Court of the United States." 2 Excerpts of Record ("E.R.") 299, ¶ 2. KSBE raised no objections to the plaintiff's anonymity in *Doe I*; indeed, it quickly agreed to a stipulation (largely drafted by its own counsel) under which the plaintiff's true name was provided to KSBE's counsel but not disclosed to Defendants themselves or to the general public. *See* 2 E.R. 174, ¶ 3. When KSBE refused a similar arrangement here, *see* 2 E.R. 184, ¶¶ 15-16, the Doe children were forced to file the motion that is the sole subject of this appeal.

The facts relevant to the anonymity issue are the threats against the Doe children and the context of those threats. In one sense, we can do no better than simply to urge the Court to read with care the *panel's own* description of those threats and that context on Pages 3318-20 of the opinion. Some highlights are as follows:

- After the district court in Hawaii issued an injunction ordering Kamehameha Schools to admit a non-Hawaiian student in 2003, there were "threats of '**kill haole day everyday**,' prompting [the U.S. Attorney for Hawaii] to warn the public that violence or threats of violence based on race are federal offenses." Panel Op. at 3318 (emphasis added).[1]

- The mother of the *Doe I* plaintiff declared under penalty of perjury that based on "calls to '**break** [the plaintiff's and his attorney's] **every bone** and **make** [**those**] **bastards suffer**' " and like threats, she and her son so feared for their safety that "they were '**prepared to move and go into hiding**' if their identities were revealed." *Id.* (emphasis added; brackets by the panel).

- The filing of this litigation generated a public prediction that "if the plaintiffs were admitted to Kamehameha, they were 'jus gonna **get lickins everyday**' " and a public "warn[ing] that if plaintiffs' 'haole attorneys continue doing this, one day they're gonna be targeted by some crazy Hawaiian or group of Hawaiians **armed with baseball bats or guns**.' " *Id.* (emphasis added).

- The past several years in Hawaii have witnessed an extraordinary number of "**violent crimes with racial overtones**"; in at least three of these, "young children **severely injured** [i.e., with dislocated jaws, black eyes, and head gashes] their non-Native classmates, calling the victims derogatory names related to their [race], especially '**f------ haole**.' " *Id.* at 3319 (emphasis added).

- Many persons posted online comments in response to newspaper reports that the magistrate judge had ruled against anonymity, including: "Good that the judge ordered them to make these little brats [sic] names known to the public, **so they can be tormented** by their fellow students and general public' "; the "**4 kids . . . will need 10 bodyguards** lol"; "**Sacrifice them!!!!!!!!**"; "[n]ow **stringing up those scum lawyers** is not such a bad idea"; and "if their names were revealed, the plaintiffs 'would have to **watch their backs** for the rest of their lives!' " Panel Op. at 3319-20 (emphasis added).

---

[1] As the panel noted, " 'Kill haole day' is an unofficial tradition in Hawaiian public schools when some Native Hawaiian children '**beat**[] **up** Caucasian students on the last day of school.' " Panel Op. at 3318 n.3 (emphasis added). The mere existence of this acknowledged "tradition" in Hawaii should be justification enough for parents to be reasonably concerned for the safety of their children and consequently to wish to avoid exposing their children to special attention on these days.

- On that same afternoon, Plaintiffs' counsel David B. Rosen received a phone call: "The caller warned that 'everyone is going to know who your clients are. Now, both you **and your haole clients** can **get the lickins'** you deserve**. Why do you f[ucking] haoles** even come to Hawaii?'" *Id.* at 3320 (emphasis added); *see also* 2 E.R. 131, ¶ 3.

- Rosen also received an e-mail, which stated in part: "You are a son of a bitch ... I know so many kids that did not get into kamehameha schools with Hawaiian blood and you are trying to take that away ... I am tired of haoles like you. **yOU JEWISH SHITHEAD!!!!** if i see you ever in public..no worries ... I will SPIT on you ... and YOU will throw the first punch ... and believe me ... it will be my pleasure to **beat the crap out of you** ... by the way ... i am a NON Hawaiian ...." Panel Op. at 3320 (emphasis added; ellipses in original).

### ARGUMENT

The decision of the panel cannot be reconciled with *Planned Parenthood* in its evaluation of the reasonableness of Plaintiffs' fears of physical harm to the four Doe children, and the decision cannot be reconciled with *Advanced Textile* in numerous respects. We lay out these points in the framework established by *Advanced Textile*, under which "a district court must balance five factors" to "determine whether to allow a party to proceed anonymously." Panel Op. at 3322 (citing 214 F.3d at 1068). The five factors are (1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears, (3) such party's vulnerability to such retaliation, (4) the prejudice to the opposing party, and (5) the public interest. *See id.* (citing same).

### A. Reasonableness of Plaintiffs' Fears

The panel identified the "two most important" of the *Advanced Textile* factors as the severity of the threatened harm and the reasonableness of the plaintiffs' fears.

*Id.* at 3324. As for the first, the panel recited some of the threats catalogued above—including "the phone call to [the Doe children's] attorney threatening that now 'both you and your haole clients can get the lickins' you deserve' "—and readily conceded that "[t]hese threats of physical retaliation are undoubtedly severe." *Id.* at 3325.

That brings us to the central issue in the case, the reasonableness of Plaintiffs' fears per se. As for this factor, the panel held:

> But, as the district court recognized, fear of severe harm is irrel-evant if the plaintiffs do not *reasonably* fear severe harm. The district court did not *abuse its discretion* in concluding that the Doe children's fears of severe harm are not reasonable.

*Id.* (second emphasis added).

The panel's first conflict with *Advanced Textile* was in applying the abuse-of-discretion standard to the district court's determination that Plaintiffs do not reason-ably fear the "undoubtedly severe" harm that the panel itself identified.[2] *Advanced*

---

[2] We note that at one point in its discussion of the threatened harm, the panel stated: "The district court did not *clearly err* in concluding that the Doe children do not rea-sonably fear severe harm" Panel Op. at 3324 (emphasis added). But in addition to the statement quoted in the text above, numerous other passages clarify that the panel in fact reviewed the district court's determination for an *abuse of discretion*. *See id.* at 3327 ("[T]he district court did not abuse its discretion in concluding that the plain-tiffs' fears were unreasonable."); *id.* ("The district court did not abuse its discretion in determining that the plaintiffs' fears were unreasonable."); *id.* at 3328 ("[T]he dis-trict court did not abuse its discretion by determining . . . that the Doe children do not reasonably fear severe harm . . . ."). Indeed, the concluding sentence of the panel's opinion incorporated this standard: "Because the district court did not abuse its dis-cretion in determining that the Doe children do not reasonably fear severe harm, we affirm the district court's order dismissing the case based on plaintiffs' failure to dis-close their identities." *Id.* at 3329.

*Textile* observed that this Court "review[s] a district court's case management decisions for an abuse of discretion." 214 F.3d at 1069. Just what does this mean in the context of a "district court's decision not to allow plaintiffs to remain anonymous at [a] preliminary stage of the litigation"? *Id.* It means that this Court will "reverse the district court's decision if the district court relied on an erroneous view of the law, made a clearly erroneous assessment of the evidence, or struck an unreasonable balance of the relevant factors." *Id.*

It is apparent that *Advanced Textile* applied the clearly-erroneous prong of this standard in considering the reasonableness of the plaintiffs' fears in that case. As to a subsidiary issue, *Advanced Textile* held that "the district court *clearly erred* in deciding that it could remedy any harm to plaintiffs" if the threats against them were in fact carried out. *Id.* at 1071 (emphasis added). As to the ultimate issue—the district court's implicit finding that the "plaintiffs failed to prove that their fears were reasonable"—*Advanced Textile* held that the district court's finding was "in error." *Id.* In the end, this Court gave little deference to the district court's finding on reasonableness: "*We believe* that plaintiffs satisfied [their] burden." *Id.* (emphasis added).

Here, the district court—undoubtedly, unquestionably, undeniably—"made a clearly erroneous assessment of the evidence" (all of it documentary) as to the reasonableness of Plaintiffs' fears. *Advanced Textile*, 214 F.3d at 1069. That is to say, the district court's reasonableness finding was "illogical, implausible, [and] without

- 7 -

support in inferences that may be drawn from facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1251 (9th Cir. 2009) (en banc). Again, we urge the Court to read with care the *panel's own* description of the "facts militating in favor of a finding that the Doe children's fears are reasonable." Panel Op. at 3326. Even that brief description, *see id.* at 3326-27, shows that audiences ranging from online commenters to the U.S. Attorney for Hawaii took these kinds of threats "very seriously." *Id.* Add to these the plaintiff in *Doe I* and his mother, who (faced with similar threats) were "prepared to move and go into hiding" if their identities were revealed. *Id.* at 3318.

We asked the panel, and now we ask all members of this Court: What parent wants to gamble whether an individual who would "break every bone" of the *Doe I* plaintiff or who would "beat the crap out of [Mr. Rosen]" would do the same to one of the four Doe children? What mother wants to gamble whether her child really will "get lickins everyday" or "get the lickins' [he] deserve[s]"? What father wants to see if his child will be part of "a final solution" (2 E.R. 254) to the problem of lawsuits against KSBE's admissions policy? To put the question another way: Which judge of this Court, faced with the information summarized on Pages 4-5 above, would not *reasonably* fear for the safety of his or her child, grandchild, niece, or nephew? Or which judge of this Court, if his or her chambers received the phone call and e-mail received by Mr. Rosen, would not *reasonably* expect the Marshals Service to pursue the matter? But the Doe children do not have federal marshals to protect them: they

must rely on anonymity. *See Advanced Textile*, 214 F.3d at 1071 (agreeing that "the most effective protection from retaliation is the anonymity of the [plaintiff]").

To be sure, as the panel pointed out, the evidence is not wholly one-sided. *See generally* Panel Op. at 3327. But to dismiss documented threats because they were made "anonymously on the internet," *id.*, is not only to ignore the threats that were made personally to Plaintiffs' counsel, *see id.* at 3320, but also to "rel[y] on an erroneous view of the law." *Advanced Textile*, 214 F.3d at 1069. This Court has rejected any notion that threats made on the Internet are not "real" threats. *See, e.g., United States v. Sutcliffe*, 505 F.3d 944, 952 (9th Cir. 2007) (affirming convictions for transmitting threats to injure, based solely on statements posted on defendant's website); *United States v. Lincoln*, 403 F.3d 703, 707 (9th Cir. 2005) (noting that "the 'wanted' posters" that were the basis for liability in *Planned Parenthood* "were publicly posted on the internet"). Concerning anonymity per se, the Second Circuit has held that a factfinder acted "unreasonably" when it "dismissed as 'of no value' the anonymous threatening calls [petitioner] received in 1992 simply, and inexplicably, because they were anonymous." *Poradisova v. Gonzales*, 420 F.3d 70, 80 (2d Cir. 2005).

The panel also thought it significant that the threatening online comments were "culled . . . out of hundreds of anonymous comments regarding this case," and that "many of the 'threats' were accompanied by statements supporting non-violence." Panel Op. at 3327. As for the former, the California Court of Appeal had occasion

- 9 -

to address this point in a decision handed down just last week: "Many of the posts at [the website] did not constitute threats of any kind, and plaintiffs admit as much . . . . That the majority of posts may have been nonthreatening *does not lessen the effect of R.R.'s [one] post*." *D.C. v. R.R.*, No. B207869, 2010 Cal. App. LEXIS 340, at \*49 (Mar. 15, 2010) (emphasis added). As for the "statements supporting non-violence," Panel Op. at 3327, the panel cites just one: the person who wrote that "stringing up those scum lawyers is not such a bad idea," *id.* at 3319, later wrote that the "people I know would *fight to the death* to save these kids if anyone *tries to harm them*," *id.* at 3327 (emphasis added); *see also* 2 E.R. 123-24. Ironically, a statement supposedly "supporting non-violence" starts with the premise that someone may try to employ violence against "these kids" and that other people, in turn, may employ additional violence to protect the children. Such a statement can hardly be reassuring to parents concerned about keeping their vulnerable children out of harm's way.

We are left with the panel's observation that neither of the two non-Hawaiian students who recently attended Kamehameha Schools suffered harm. *Id.* This suggests a standard under which the Doe children must prove that they "necessarily" will suffer harm. But *Advanced Textile* expressly holds that "plaintiffs are *not* required to prove that [persons] intend to carry out the threatened retaliation." 214 F.3d at 1071 (emphasis added). The real question is whether "a reasonable person [here, a parent] would believe that the threat *might* actually be carried out." *Id.* (emphasis added).

In the context of First Amendment "true threat" analysis, the en banc Court in *Planned Parenthood* held:

> Alleged threats should be considered in light of their entire factual context, including the surrounding events and reaction of the listeners. The fact that a threat is subtle does not make it less of a threat. A true threat . . . is one where a reasonable person would foresee that the listener will believe he will be subjected to physical violence upon his person . . . .

290 F.3d at 1075. The panel gave lip service to these precepts, *see* Panel Op. at 3325, but its treatment of the evidence has the segmented and formalistic character that is the very opposite of the contextual analysis called for by *Planned Parenthood*.

The "entire factual context" here is a history of actual, and sometimes severe, violence against "f----- haole[s]"; two persons formerly in Plaintiffs' shoes who so fear for their safety that they are "prepared to move and go into hiding" if their identities are made public; a long list of explicit statements of physical violence against Plaintiffs and their counsel, ranging from "Sacrific[ing]" the former to "stringing up" the latter; and, most recently, the prediction that the "4 kids . . . will need 10 bodyguards" because disclosure of their identities will cause those four "fucking haoles" to "get the lickins' [they] deserve." To say on this record that Plaintiffs' parents do not *reasonably* fear for the safety of their children is clearly—manifestly, patently, transparently—erroneous. Indeed, on this record, it is no exaggeration to say that it would be positively *un*reasonable for parents to disregard the threats and the context and thus permit the identities of their children to be revealed to the public.

- 11 -

## B.    Vulnerability and Lack of Prejudice

These two factors need not detain us long, for the panel found that both favor the Doe children.  Thus, the panel concluded that "the vulnerability of plaintiffs . . . weighs in favor of anonymity," and the panel labeled any prejudice to Defendants as "minimal," for it is "doubt[ful] that anonymity would hinder the defendants' standing defense."  Panel Op. at 3328 & n.7.

## C.    Public Interest

With respect to this final factor, the Doe children readily acknowledge that in "this circuit, the common law rights of access to the courts and judicial records are not taken lightly."  Panel Op. at 3323.  But it has also been the law in this circuit for nearly a decade that "a party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity."  *Advanced Textile*, 214 F.3d at 1068.

In evaluating the public's interest here, we yet again follow the panel's lead.  First of all:

> [I]t is difficult to see "how disguising plaintiffs' identities will obstruct public scrutiny of the important issues in this case."  The Doe children bring claims of widespread discrimination.  Neither the district court, the Ninth Circuit panel nor the en banc court in *Doe I* placed any reliance on the plaintiff's identity.  There is no reason to believe these issues will play a greater role here.

Panel Op. at 3323 (quoting *Advanced Textile*, 214 F.3d at 1072).

- 12 -

Second, the "district court concluded that the public scrutiny of the Doe children's standing would be impaired by anonymity," but the panel disagreed with that assessment: "Although standing is indeed of paramount importance to the plaintiffs' ability to sue, it is certainly not the main issue in the public's eye. And, with such a large applicant pool, the court will most likely be able to discuss most aspects of an individual's application without revealing the individual plaintiff's identity." *Id.*

Third, the panel "recognize[d] that the fact that the 'public . . . has an interest in seeing this case decided on the merits' weighs in favor of allowing anonymity." *Id.* (quoting *Advanced Textile*, 214 F.3d at 1073). In this regard, "the district court's finding that 'this case presents extremely controversial and very important issues in Hawaii' weighs in favor of allowing the Doe children to proceed anonymously." *Id.* (citing *Advanced Textile*, 214 F.3d at 1072). Additionally, "[b]ecause the case was dismissed for failure to include the plaintiffs' names in the complaint, 'permitting the plaintiffs to use pseudonyms [would] serve the public's interest in this lawsuit by enabling it to go forward.' " *Id.* at 3324 (quoting *Advanced Textile*, 214 F.3d at 1073).

Having given a veritable litany of reasons why the public interest factor favors anonymity for the Doe children, the panel performed a volte-face: "Given the strong general presumption that plaintiffs will conduct litigation under their own names, we cannot say that the district court abused its discretion by concluding that this factor favors defendants." *Id.* But in the face of the numerous specific reasons—precisely

the reasons that animated the decision in favor of anonymity in *Advanced Textile*, as the panel itself recognized—a "general presumption" against anonymity cannot carry the day if *Advanced Textile* is to retain any vitality.

Any such "general presumption" is all the more unsupportable in light of this Court's treatment of anonymous plaintiffs in many contexts. As the panel adverted to, *see* Panel Op. at 3323, none of the courts that superintended the *Doe I* litigation —from district court to the three-judge panel to the fifteen-judge en banc Court to the Supreme Court—expressed the slightest interest in (let alone concern over) the plaintiff's anonymity. Last October, this Court decided a major case about the scope of referendum petition signers' First Amendment right to remain anonymous vis-à-vis the general public—without even commenting on the fact that the individual plaintiffs were litigating the case anonymously. *See John Doe #1 v. Reed*, 586 F.3d 671 (9th Cir. 2009).[3] Likewise, barely more than a week after the panel's decision here, another panel of this Court handed down a long-awaited decision on the constitutionality of the Pledge of Allegiance. Except for the first-named plaintiff (who did not even have standing), all plaintiffs used pseudonyms: Pat Doe, Jan Doe, DoeChild, Jan Poe; PoeChild; RoeChild-1, Jan Roe, and RoeChild-2. *See Newdow v. Rio Linda Union School District*, No. 05-17257, 2010 U.S. App. LEXIS 5201 (9th Cir. Mar. 11,

---

[3] Nor did that anonymity worry the Supreme Court, which granted both a stay and a petition for certiorari without comment on the issue. *See John Doe #1 v. Reed*, 130 S. Ct. 486 (2009); *John Doe #1 v. Reed*, 130 S. Ct. 1133 (2010).

2010); *cf. id.* at *14-17 (affirming denial of standing to plaintiff Newdow). In all of the 193 pages of slip opinions, no member of the panel even thought to comment on the anonymity of the plaintiffs.

Given the foregoing, to uphold the district court's public-interest determination on a no-abuse-discretion rationale is quintessentially arbitrary. The same is true for the district court's ultimate determination against permitting the Doe children to proceed anonymously: when all of the factors point in the children's favor, it must be said that the district court "struck an unreasonable balance of the relevant factors." *Advanced Textile*, 214 F.3d at 1069.

* * * * *

The photograph of 12-year-old Evelyn Higgins and the surgical staples used to close the racially-inspired gash in her head, *see* 2 E.R. 234 (attached hereto), is a graphic example of what the parents of Jacob and Janet Doe, Karl Doe, and Lisa Doe feared for their children—and hoped to avoid by proceeding anonymously with this civil rights action. Given the entire factual context set forth in the record evidence, those fears were reasonable. Given the lack of any real prejudice to KSBE, and given the importance of having the legality of KSBE's Hawaiians-only admissions policy decided on the merits once and for all, the district court and the panel clearly should have accommodated Plaintiffs' request for anonymity.

## CONCLUSION

Appellants' petition for rehearing en banc should be granted.

Dated:  March 23, 2010.

Respectfully submitted,

s/ Eric Grant
Eric Grant
David B. Rosen

Counsel for Plaintiffs/Appellants

## CERTIFICATE OF COMPLIANCE

I hereby certify pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C) that the foregoing pleading contains 4,198 words.

Dated:  March 23, 2010.

s/ Eric Grant_____
Eric Grant

Counsel for Plaintiffs/Appellants

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on March 23, 2010.

I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ Eric Grant                           
Eric Grant

Counsel for Plaintiffs/Appellants