**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

JACOB DOE, a minor, by parents and next friends, James and Joyce Doe; JANET DOE, a minor, by parents and next friends James and Joyce Doe; KARL DOE, a minor, by parents and next friends, Kirk and Kate Doe; LISA DOE, a minor, by mother and next friend, Laura Doe,
    *Plaintiffs-Appellants,*

v.

KAMEHAMEHA SCHOOLS/BERNICE PAUAHI BISHOP ESTATE; NAINOA THOMPSON, in his capacity as Trustee; DIANE J. PLOTTS, in her capacity as Trustee; CORBETT A.K. KALAMA, in his capacity as Trustee; ROBERT K.U. KIHUNE, in his capacity as Trustee; J. DOUGLAS ING, in his capacity as Trustee,
    *Defendants-Appellees.*

No. 09-15448

D.C. No.
1:08-cv-00359-JMS-BMK

OPINION

Appeal from the United States District Court
for the District of Hawaii
J. Michael Seabright, District Judge, Presiding

Argued and Submitted
October 13, 2009—Honolulu, Hawaii

Filed March 2, 2010

3311

Before: Robert R. Beezer, Susan P. Graber and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge Beezer

## COUNSEL

Eric Grant, Sacramento, California, for the plaintiffs-appellants.

Kathleen M. Sullivan, Quinn Emanuel Urquhart Oliver & Hedges LLP, New York, New York, for the defendants-appellees.

## OPINION

BEEZER, Circuit Judge:

Few tenets of the United States justice system rank above the conflicting principles presented in this case: the transparency and openness of this nation's court proceedings and the ability of private individuals to seek redress in the courts without fear for their safety. The plaintiffs, four minor children ("the Doe children"), seek to proceed anonymously in their suit against Kamehameha Schools' allegedly race-based admissions policy. The plaintiffs' parents fear for the children's safety if their identities are revealed. After carefully considering the issue, the magistrate judge and district judge decided that the prejudice to the defendants and the public's interest in open courts outweigh plaintiffs' fears of harm. Rather than disclose their names, the Doe children suffered dismissal with prejudice with leave to appeal, giving us jurisdiction under 28 U.S.C. § 1291. We affirm.

I

The Hawaiian monarchy was overthrown in 1893, and Hawaii was annexed as a territory of the United States in 1897. *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Estate* (*Doe I*), 470 F.3d 827, 831 (9th Cir. 2006) (en banc). By that time, U.S. and foreign settlement had brought economic distress, mortality and disease; the Native Hawaiian population had dwindled to 22,600 in 1919, from a population 10 to 50 times larger a century and a half earlier. *See id.* at 830.

It was in this context that in 1884, Princess Bernice Pauahi Bishop, the last descendant of the Hawaiian monarchy, established two schools and a testamentary trust to fund them. *See* Leigh Caroline Case, Note, *Hawaiian Eth(n)ics: Race and Religion in Kamehameha Schools*, 1 Wm. & Mary Bill Rts. J. 131, 131 (1992). The Kamehameha Schools have sought to preserve the Hawaiian culture and identity by providing classes on Hawaiian culture and teaching classes in the Hawaiian language. The teaching and use of the Hawaiian language were banned in public schools from 1896 to 1986. U.S. Dep't of Justice & U.S. Dep't of Interior, *From Mauka to Makai: The River of Justice Must Flow Freely* 29 (2000).

The schools have since expanded to three K-12 campuses, and the trust totaled $9.1 billion in 2008—a private educational endowment surpassed in the United States by very few universities. *See* Rick Daysog, *Kamehameha Assets Approach $9.1 Billion*, Honolulu Advertiser, Feb. 9, 2008; Donald A. Thompson, Note, Brown *v.* Kamehameha Schools*: An Instrumental Critique of Remedial Self-Segregation in Private Education*, 81 S. Cal. L. Rev. 831, 833-34 (2008). But the board of trustees has interpreted the trust instrument to require the admission of Native Hawaiians to the near exclusion of applicants of other racial backgrounds. *Doe I*, 470 F.3d at 832. The Schools' publicly acknowledged policy is to grant admission to any applicant with any amount of Native Hawaiian blood before admitting other applicants. *Id.* Indeed, since 1966, only two non-Native Hawaiians have been admitted. David M. Forman, *The Hawaiian Usage Exception to the Common Law: An Inoculation Against the Effects of Western Influence*, 30 U. Haw. L. Rev. 319, 331 (2008).[1]

The schools voluntarily admitted one non-Native applicant, Kalani Rosell, in 2002, after determining that all qualified

---

[1]In the 1960s, Kamehameha Schools reversed its previous policy of allowing children of faculty members to attend the schools. *Doe I*, 470 F.3d at 870 (Bybee, J., dissenting).

Native Hawaiian applicants had been admitted. *See id.*; Thompson, *supra*, at 833. The ensuing protests prompted Kamehameha to amend its admissions policy. Thompson, *supra*, at 833. Kamehameha waived the application fee and the minimum-test-score requirement, effectively ensuring that there would never again be an insufficient number of qualified Native-Hawaiian applicants. *Id.*

Another non-Native Hawaiian was admitted in 2003. Kamehameha Schools admitted Brayden Mohica-Cummings, who applied as a Native Hawaiian because his mother was adopted by a Native Hawaiian. Forman, *supra*, at 332. After determining that Mohica-Cummings was not of Native Hawaiian ancestry, Kamehameha rescinded his admission. *Id.* Mohica-Cummings sued for an injunction admitting him to the Schools. *Id.* The District of Hawaii granted a temporary injunction admitting the boy, and he was eventually allowed to matriculate as part of the settlement with Kamehameha. *Id.*

In 2003, a non-Native applicant to Kamehameha, challenged the Schools' admissions policy under 42 U.S.C. § 1981. *See Doe I*, 470 F.3d at 829. The district court upheld the admissions policy. *Id.* A panel of this Court reversed, but the en banc court reversed again, concluding that the admissions policy was a valid affirmative action plan. *See id.* The suit settled while the petition for certiorari was pending before the Supreme Court. Thompson, *supra*, at 835. The next day, the attorney in *Doe I* announced his intention to bring this suit in order to seek Supreme Court review of the Ninth Circuit's en banc decision. *See id.*

This case, however, quickly became mired in procedural conflict. In *Doe I*, Kamehameha never objected to the fact that the plaintiff proceeded anonymously, but the school objected to the Doe children's request for anonymity in this case. The Doe children moved for leave to proceed anonymously.[2]

---

[2] Plaintiffs' names were told to Kamehameha's counsel and some staff under a protective order.

In their motion, the Doe children argued that they reasonably fear physical injury if their identities are revealed. First, the Doe children pointed to public reactions to the District of Hawaii's injunction provisionally admitting Mohica-Cummings to Kamehameha. After the district court's order, the U.S. Attorney for Hawaii noted a "growing sense of anger and rage" and threats of "kill haole day everyday," prompting him to warn the public that violence or threats of violence based on race are federal offenses.[3]

Second, the plaintiffs referred to an affidavit executed by the *Doe I* plaintiff's mother. She recounted that after the amount of the *Doe I* settlement was leaked to the Honolulu press, there were calls to "break [the plaintiff's and his attorney's] every bone and make [those] bastards suffer." Others stated that "now the boy will have to pay" because they knew people "who want to kick this boys [sic] ****." Still others urged that the identities of the *Doe I* plaintiff and his mother be exposed to force them "to stand up and face those that they are robbing." She stated that because of these threats, she and her son would "fear for [their] safety if [their] identities [were] made public" and that they were "prepared to move and go into hiding" if their identities were revealed.

Third, the Doe children referred to various internet postings regarding their lawsuit. One posting predicted that if the plaintiffs were admitted to Kamehameha, they were "jus gonna get lickins everyday." Another posting warned that if plaintiffs' "haole attorneys continue doing this, one day they're gonna be targeted by some crazy Hawaiian or group of Hawaiians armed with baseball bats or guns."

---

[3]"Haole" is a term in the Native Hawaiian language denoting a foreigner, especially a White or Caucasian person. *Webster's Third New International Dictionary of the English Language, Unabridged* 1030 (1981). "Kill haole day" is an unofficial tradition in Hawaiian public schools when some Native Hawaiian children "beat[ ] up Caucasian students on the last day of school." Craig Gima, 'Kill Haole Day' Linked to Hate-Crime Bill, Honolulu Star Bulletin, Mar. 24, 1999.

Finally, the plaintiffs called the court's attention to violent crimes with racial overtones committed by Native Hawaiians against non-Natives. In some of these crimes, young children severely injured their non-Native classmates, calling the victims derogatory names related to their skin color, especially "f------ haole."

Magistrate Judge Kurren found that the threats against plaintiffs in previous lawsuits and the attorneys were not directed toward the Doe children. The magistrate judge also found that other internet "comments [were] not threats but [did] voice the commentators' frustration with this lawsuit." Likewise, the magistrate judge discounted the anonymous internet comments suggesting that the Doe children would be injured at Kamehameha Schools, relying on the plaintiffs' statement that they "are fearful of *public* harassment and retaliation, as reflected in *public* threats and other vitriol, *not* with possible retaliation and ostracism at KS if and when they are admitted." Although the plaintiffs' parents' affidavits showed "subjective fear" of retaliation, the court found that, "[a]t most, Plaintiffs' evidence suggests they may be socially ostracized." The magistrate judge denied the motion to proceed anonymously.

Later that afternoon, two Hawaiian newspapers published stories reporting on the magistrate judge's order. The online forums of each newspaper generated myriad comments. The Doe children moved to reconsider based on this newly discovered evidence, highlighting comments such as, "Good that the judge ordered them to make these little brats [sic] names known to the public, so they can be tormented by their fellow students and general public." Another posting stated that these "4 kids . . . will need 10 bodyguards lol." Another read, "Sacrifice them!!!!!!!!," and another: "And I'd say the majority of 'us' don't want anything bad to happen to the kids. We all realize that they are mere pawns in this mess caused by 'adults.' Now stringing up those scum lawyers is not such a bad idea. (Don't be scared, it's in the Halloween spirit)."

3320    Doe v. Kamehameha Schools

Another predicted that if their names were revealed, the plaintiffs "would have to watch their backs for the rest of their lives!"

Plaintiffs also introduced threatening comments made to their attorney, David Rosen. Rosen received a phone call on the afternoon the magistrate judge's decision was filed. The caller warned that "everyone is going to know who your clients are. Now, both you and your haole clients can get the lickins' you deserve. Why do you f------ haoles even come to Hawaii?" He also received an email:

> You are a son of a bitch . . . I know so many kids that did not get into kamehameha schools with Hawaiian blood and you are trying to take that away . . . I am tired of haoles like you. yOU JEWISH SHITHEAD!!!! if i see you ever in public..no worries . . . I will SPIT on you . . . and YOU will throw the first punch . . . and believe me . . . it will be my pleasure to beat the crap out of you . . . by the way . . . i am a NON Hawaiian . . . .

The magistrate judge found the additional comments "no more probative of a threat of harm to Plaintiffs than evidence this Court previously considered" and denied the motion to reconsider.

On review, the district court concluded that the motion to proceed anonymously was a nondispositive matter under Federal Rule of Civil Procedure 72(a) and upheld the magistrate judge's findings as neither clearly erroneous nor contrary to law. The district court determined that the Doe children had committed two fatal procedural flaws in their briefing.[4] In the

---

[4]The district court ruled against the Doe children's motion to proceed anonymously on two procedural grounds, which we reject. The district court correctly determined that the Doe children's motion was nondispositive under Federal Rule of Civil Procedure 72(a) and Local Rule 74.1 and

alternative, the district judge ruled against the Doe children on the merits. The court found that the Doe children only appealed two of the relevant *factors*—whether the threatened harm is sufficiently severe and whether reasonable persons in the plaintiffs' position would believe that they might actually be harmed.[5] The court concluded that, "[g]iven the absence of threats directed to Plaintiffs, no reasonable person in *any* position would believe a threat would be carried out."

II

We review the district court's denial of plaintiffs' motion for leave to proceed anonymously for an abuse of discretion.

---

that the standard of review was whether the magistrate judge's findings were "clearly erroneous or contrary to law." *See* 28 U.S.C. § 636(b)(1)(A); *Maisonville v. F2 Am., Inc.*, 902 F.2d 746, 747-48 (9th Cir. 1990). Nonetheless, the Doe children's failure to argue under the correct standard of review did not constitute procedural default.

Second, the district court affirmed the magistrate judge's report on the ground that the Doe children offered no arguments for reversal but just incorporated by reference arguments made before the magistrate judge. Plaintiffs argue that Local Rule 74.1 requires only that the "appealing party [file and serve] a written statement of appeal [on the district court] which shall specifically designate the order, or part thereof, appealed from." Kamehameha Schools argues that Federal Rule of Civil Procedure 10(c) does not allow a party to incorporate earlier briefing by reference. *See Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 345 (9th Cir. 1996)). Yet the Doe children justify their incorporation by reference under Local Rule 74.1, not Federal Rule 10(c). Rule 74.1 must be interpreted in light of Local Rule 74.2, which requires a party appealing a magistrate judge's case dispositive order to file "written objections that specifically identify the portions of the order, findings, or recommendations to which objection is made and the basis for such objections." The absence of such specific requirements in Rule 74.1 is telling. Therefore, the Doe children did not default by merely appealing the magistrate judge's order and incorporating the arguments fully briefed before the magistrate judge.

[5]Given that we hold that the Doe children did not procedurally default, we also hold that they properly appealed consideration of all the factors relevant to a motion to proceed anonymously.

*Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1069 (9th Cir. 2000). We must affirm the district court unless the district court "relied on an erroneous view of the law, made a clearly erroneous assessment of the evidence, or struck an unreasonable balance of the relevant factors." *Id.*

### III

**[1]** To determine whether to allow a party to proceed anonymously when the opposing party has objected, a district court must balance five factors: "(1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears, . . . (3) the anonymous party's vulnerability to such retaliation," (4) the prejudice to the opposing party, and (5) the public interest. *Id.* at 1068 (internal citations omitted).

**[2]** The *Advanced Textile* analysis here is quite difficult, particularly in light of the controversy surrounding the case, the recognized tension between some Native Hawaiians and non-Natives in Hawaii and the threats against the anonymous plaintiffs. Still, the district court did not abuse its discretion in refusing to allow anonymity because the district court did not clearly err in its conclusion that the Doe children do not reasonably fear severe harm. Thus, the district court did not unreasonably conclude that the public interest and possible prejudice to the defendants outweigh the plaintiffs' interest in anonymity.

### A

**[3]** The *Advanced Textile* factor concerning the public interest sets the stage for our debate, so it is where we begin. The normal presumption in litigation is that parties must use their real names. *See id.* at 1067-68; Fed. R. Civ. P. 10(a). This presumption is loosely related to the public's right to open courts, *see Advanced Textile*, 214 F.3d at 1067, and the right of private individuals to confront their accusers, *see S.*

*Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979).

**[4]** In this circuit, the common law rights of access to the courts and judicial records are not taken lightly. We recognize that there is a "general right to inspect and copy public records and documents, including judicial records and documents." *Kamakana v. City of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (internal quotation marks and citations omitted). The "public interest in understanding the judicial process" has supported our "general history of access." *Id.* at 1178-79 (internal quotation marks omitted).

**[5]** But, on the other side of the public-interest debate, it is difficult to see "how disguising plaintiffs' identities will obstruct public scrutiny of the important issues in this case." *Advanced Textile*, 214 F.3d at 1072. The Doe children bring claims of widespread discrimination. Neither the district court, the Ninth Circuit panel nor the en banc court in *Doe I* placed any reliance on the plaintiff's identity. There is no reason to believe these issues will play a greater role here.

The district court concluded that the public scrutiny of the Doe children's standing would be impaired by anonymity. Defendants proclaim that "the standing issue is of critical (in fact, *constitutional*) significance to the litigation." Although standing is indeed of paramount importance to the plaintiffs' ability to sue, it is certainly not the main issue in the public's eye. And, with such a large applicant pool, the court will most likely be able to discuss most aspects of an individual's application without revealing the individual plaintiff's identity.

**[6]** Similarly, we recognize that the fact that the "public . . . has an interest in seeing this case decided on the merits" weighs in favor of allowing anonymity. *Id.* at 1073. Indeed, the district court's finding that "this case presents extremely controversial and very important issues in Hawaii" weighs in favor of allowing the Doe children to proceed anonymously.

*See id.* at 1072. Because the case was dismissed for failure to include the plaintiffs' names in the complaint, "permitting the plaintiffs to use pseudonyms [would] serve the public's interest in this lawsuit by enabling it to go forward." *Id.* at 1062, 1073.

**[7]** The district court properly weighed the arguments under the public-interest factor both for and against anonymity. Given the strong general presumption that plaintiffs will conduct litigation under their own names, we cannot say that the district court abused its discretion by concluding that this factor favors defendants.

B

**[8]** The important public-interest factors on both sides of the issue lay the foundation for our debate, but the outcome of this case comes down to the two most important factors— severity of the threatened harm and the reasonableness of the plaintiffs' fears. As the district court recognized, these two *Advanced Textile* factors are intricately related and should be addressed together. In order to proceed anonymously, a plaintiff must show both (1) a fear of severe harm, *and* (2) that the fear of severe harm is reasonable. The district court did not clearly err in concluding that the Doe children do not reasonably fear severe harm.

First, the district court must identify the harm that the plaintiffs fear. Here, the Doe children primarily fear physical harm if their identities are revealed. The Doe children point to threats that they were "jus gonna get lickins everyday" and that these "4 kids . . . will need 10 bodyguards lol." The children likewise point to the phone call to their attorney threatening that now "both you and your haole clients can get the lickins' you deserve." They also point to the vitriolic threats of "kill haole day everyday" after Mohica-Cummings was admitted to Kamehameha.

**[9]** These threats of physical retaliation are undoubtedly severe. In *Advanced Textile*, we recognized that physical harm presents the paradigmatic case for allowing anonymity. In that case, the non-resident plaintiffs faced the severe threats of deportation, arrest, and imprisonment, such that they did "*not* need to prove that they face[d] a danger of physical injury." *Id.* at 1071.

**[10]** But, as the district court recognized, fear of severe harm is irrelevant if the plaintiffs do not *reasonably* fear severe harm. The district court did not abuse its discretion in concluding that the Doe children's fears of severe harm are not reasonable. *Advanced Textile* instructs that "plaintiffs are not required to prove that the defendants intend to carry out the threatened retaliation. What is relevant is [whether] plaintiffs were threatened, and [whether] a reasonable person would believe that the threat might actually be carried out." *Id.*

To judge the reasonableness of the plaintiffs' fears, we must consider the surrounding context and other listeners' reactions to the threats. *Cf., e.g.*, *Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1079-80 (9th Cir. 2002) (en banc) (taking into account the context of the "random acts of violence" of others); *United States v. Prochaska*, 222 F.2d 1, 2 (7th Cir. 1955) (finding in criminal speech case that "[w]ritten words or phrases take their character as threatening or harmless from the context in which they are used, measured by the common experience of the society in which they are published").[6] In

---

[6] These First Amendment cases discussing the concept of a "true threat" are helpful, but the analysis here is not identical. The First Amendment cases pose a higher bar to finding a reasonable fear. In those cases, one party's fear of the threat must be weighed against the opposing party's First Amendment right to speak freely because the threatened party seeks to prevent the other party's speech (the alleged threats). *See, e.g.*, *Planned Parenthood*, 290 F.3d at 1071-72 (noting that the definition of "threat" is strict in First Amendment cases because advocating violence is protected but threatening violence is not). In this case, no one is arguing that the courts should enjoin the internet posters or other speakers.

context, a plaintiff might reasonably fear a veiled threat of violence. *See Doe v. Stegall*, 653 F.2d 180, 183 n.6 (5th Cir. 1981) (holding that the plaintiffs reasonably feared harm and could proceed pseudonymously where locals reacted to a lawsuit about school prayer at a meeting by saying things like "God is fixing to come back. He'll show them," "Christians must beat the evil out of these people," and "We have got to band together and whop this evil thing"). On the other hand, a court may disregard a comment, which is a threat on its face, because the context demonstrates frustration, a joke, or political commentary instead of a true intent to harm. *See Watts v. United States*, 394 U.S. 705, 706-07 (1969) (per curiam) (concluding that speech against military draft that "[i]f they ever make me carry a rifle the first man I want to get in my sights is L.B.J." was protected political speech in part because listeners laughed). It is in the particular purview of the district court to view alleged threats in context and determine what the "reasonable" person in the plaintiffs' situation would fear.

Here, there are several facts militating in favor of a finding that the Doe children's fears are reasonable. In context, the threats on the internet become much more frightening. The context no doubt includes random acts of racial violence against non-Native Hawaiian children. This is amplified by calls for "kill haole day everyday," when a non-Native was recently admitted to Kamehameha.

And as for evaluating the effect on other listeners, the U.S. Attorney for Hawaii did not laugh or dismiss the calls for "kill haole day" as the listeners laughed at the "threat" against President Johnson in the *Watts* case. Instead, the U.S. Attorney issued a strongly worded warning, reminding the public that threats based on race are a federal felony. Likewise, many of the "listeners" responding to the internet postings took the comments very seriously. One internet poster accused the others of "just want[ing] to persecute these kids," and another poster responded that "the majority of 'us' don't want any-

thing bad to happen to the kids," implying that others did wish the children harm.

**[11]** Nonetheless, the district court did not abuse its discretion in concluding that the plaintiffs' fears were unreasonable. The magistrate judge correctly recognized that many times people say things anonymously on the internet that they would never say in another context and have no intention of carrying out. *See* Mark Plate, *Online Abuses Spur Policy Changes*, Honolulu Advertiser, Nov. 24, 2008 (message from Senior Vice President/Editor of *The Honolulu Advertiser*, noting the problems the newspaper had with internet postings on many stories: "Since we opened up the option . . . for readers to comment on every story, . . . . [u]nfortunately, we have seen a steady rise of hateful name-calling, innuendo and inane drivel, all of it anonymous"). The magistrate judge noted that plaintiffs had culled only a few comments out of hundreds of anonymous comments regarding this case. And he recognized that many of the "threats" were accompanied by statements supporting non-violence. One poster the Doe children cite as making threatening comments later stated that "No one wants to see any of the kids hurt by this. The people I know would fight to the death to save these kids if anyone tries to harm them." The district court also correctly evaluated the Doe children's concession "that they are not fearful of 'retaliation and ostracism at [Kamehameha] if and when they are admitted' " in discounting the threats that the children would get "lickins" everyday at school. Likewise, Rosell and Mohica-Cummings both attended Kamehameha with no reported incidents—either at school or outside the school setting. Mohica-Cummings used his real name in litigation against Kamehameha, and his counsel specifically stated that the U.S. Attorney's warnings to the public were unnecessary. The district court did not abuse its discretion in determining that the plaintiffs' fears were unreasonable.

3328　Doe v. Kamehameha Schools

### C

**[12]** Because the district court did not abuse its discretion by determining that the public interest weighs against anonymity and that the Doe children do not reasonably fear severe harm, the remaining two factors do not tip the balance. The district court correctly concluded that the third factor, the vulnerability of plaintiffs, weighs in favor of anonymity. Although the "youth of these plaintiffs [is] a significant factor in the matrix of considerations arguing for anonymity," *Stegall*, 653 F.2d at 186, the district court concluded that the Doe children do not reasonably fear severe harm *despite* this vulnerability. Likewise, the district court did not abuse its discretion in determining that plaintiffs' fears do not outweigh possible prejudice to defendants—however minimal that prejudice might be—in light of the district court's conclusion that these fears are unreasonable.[7]

---

[7]The district court did not discuss this element because it found that the plaintiffs had not sufficiently objected to the magistrate judge's resolution of this factor. We conclude that the plaintiffs raised this argument before the district court, *see supra* notes 4-5, but hold that this factor does not sway our analysis.

The magistrate judge found that the defendants would be prejudiced if the Doe children were to proceed anonymously due to standing-related discovery. The magistrate judge found that obtaining records regarding the Doe children, such as applications, would be burdened by the limited number of employees allowed to know the plaintiffs' names. The Doe children counter that thousands of pages of discovery, including plaintiffs' application packages, have already been produced.

We doubt that anonymity would hinder the defendants' standing defense. The Doe children have revealed their names under a protective order, and the parties could refer in general terms to the Doe children's relevant characteristics, such as whether they completed their applications or met the school's requirements in terms of test scores and grades. Likewise, the Doe children's actual applications could be used simply by redacting the children's names and any particular identifying information. However, the district court did not abuse its discretion by finding that defendants would have been hindered in their efforts to gather third-party discovery concerning standing and in defending the high-profile case in the media, if not in the courts.

We are sympathetic to the concerns of the Doe children and their parents, but we recognize the paramount importance of open courts. For this reason, the default presumption is that the plaintiffs will use their true names. We also emphasize that, as an appellate court, we are constrained by the applicable standard of review. Had the district court found that anonymity was appropriate, we likely would have concluded that the district court did not abuse its discretion. Or, were we permitted to make findings and weigh the factors anew, we might have held that anonymity here was appropriate. As it is, however, we review the district court's decision only for abuse of discretion. Because the district court did not abuse its discretion in determining that the Doe children do not reasonably fear severe harm, we affirm the district court's order dismissing the case based on plaintiffs' failure to disclose their identities.

**AFFIRMED.**