# No. 09-15448

IN THE

# United States Court of Appeals

FOR THE NINTH CIRCUIT

———— ▶ ▶◀◀ ————

JACOB DOE AND JANET DOE, MINORS, BY THEIR PARENTS AND NEXT FRIENDS, JAMES AND JOYCE DOE; KARL DOE, A MINOR, BY HIS PARENTS AND NEXT FRIENDS, KIRK AND KATE DOE; AND LISA DOE, A MINOR, BY HER MOTHER AND NEXT FRIEND, LAURA DOE,

*Plaintiffs-Appellants,*

v.

KAMEHAMEHA SCHOOLS/BERNICE PAUAHI BISHOP ESTATE; AND NAINOA THOMPSON, DIANE J. PLOTTS, CORBETT A. K. KALAMA, ROBERT K. U. KIHUNE, AND J. DOUGLAS ING, IN THEIR CAPACITIES AS TRUSTEES THEREOF,

*Defendants-Appellees.*

————————————

*On Appeal from the United States District Court
For the District of Hawai`i
Hon. J. Michael Seabright, District Judge*

## DEFENDANTS-APPELLEES' RESPONSE TO PETITION FOR REHEARING EN BANC

Date of Decision: March 2, 2010
Judges: Beezer, Graber, and Fisher

Colleen I. Wong
KAMEHAMEHA SCHOOLS
567 S. King Street, Suite 310
Honolulu, HI 96813
(808) 523-6341

Paul Alston
Jason H. Kim
ALSTON HUNT FLOYD & ING
1001 Bishop Street, Suite 1800
Honolulu, HI 96813
(808) 524-1800

May 5, 2010

Kathleen M. Sullivan
William B. Adams
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ...................................................................................1

COUNTERSTATEMENT OF FACTS ...................................................3

    A.    Background .................................................................3

    B.    The Does' Complaint And Motion To Proceed Anonymously ..........4

    C.    The Decisions Below Rejecting Anonymity ........................................5

        1.    The Magistrate Judge's Decision ................................................5

        2.    The Magistrate Judge's Decision Denying Reconsideration...............................................................................7

        3.    The District Court's Decision Affirming The Magistrate Judge's Rulings .......................................................................7

        4.    The Panel's Decision .................................................................8

ARGUMENT .......................................................................................10

I.    THE PANEL'S DECISION DOES NOT CONFLICT WITH *ADVANCED TEXTILE* ........................................................................10

    A.    The Panel Applied The Correct Standard Of Review........................10

    B.    The Does' Factual Disagreement With The Panel's Application Of *Advanced Textile* Presents No Ground For *En Banc* Review........11

        1.    Reasonable Fear ......................................................................11

        2.    Public Interest .........................................................................16

II.    THE PANEL'S DECISION DOES NOT CONFLICT WITH *PLANNED PARENTHOOD* .........................................................................17

CONCLUSION ....................................................................................19

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Arakaki v. Hawaii*,
  314 F.3d 1091 (9th Cir. 2002) ...............................................................4

*Arakaki v. Lingle*,
  477 F.3d 1048 (9th Cir. 2007) .............................................................4

*Carroll v. Nakatani*,
  342 F.3d 934 (9th Cir. 2003) ...............................................................4

*D.C. v. R.R.*,
  185 Cal. App. 4th 1190 (2010) ...........................................................15

*Day v. Sebelius*,
  227 F.R.D. 668 (D. Kan. 2005) ..........................................................12

*Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate*,
  470 F.3d 827 (9th Cir. 2006) ........................................................3, 12

*Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate*,
  596 F.3d 1036 (9th Cir. 2010) ...................................................*passim*

*Doe v. Pleasant Valley Sch. Dist.*,
  2007 WL 2234514 (M.D. Pa. 2007) ...................................................14

*Doe v. Stegall*,
  653 F.2d 180 (5th Cir. 1981) .............................................................15

*Doe v. Texaco, Inc.*,
  2006 WL 2850035 (N.D. Cal. Oct. 5, 2006) ......................................12

*Does I thru XXIII v. Advanced Textile Corp.*,
  214 F.3d 1058 (9th Cir. 2000) ...................................................*passim*

*Planned Parenthood of Columbia/Willamette, Inc. v. American Coalition
  of Life Activists*,
  290 F.3d 1058 (9th Cir. 2002) ...............................................2, 17, 18

*Poradisova v. Gonzales*,
    420 F.3d 70 (2d Cir. 2005) ................................................................. 18

*Rice v. Cayetano*,
    528 U.S. 495 (2000) ........................................................................... 4

*United States v. Lincoln*,
    403 F.3d 703 (9th Cir. 2005) ............................................................. 18

*United States v. Sutcliffe*,
    505 F.3d 944 (9th Cir. 2007) ............................................................. 18

## Statutes & Rules

42 U.S.C. § 1981 .................................................................................... 3, 4

Fed. R. App. P. 35(a)(1) ......................................................................... 2

Fed. R. App. P. 35(a)(2) ......................................................................... 2

## <u>INTRODUCTION</u>

In this case, the Does sought to overcome the strong presumption of openness in federal judicial proceedings by claiming, based upon a handful of anonymous Internet comments and news stories, that they feared reprisal if they challenged the Native Hawaiian admissions policy of the Kamehameha Schools/Bernice Pauahi Bishop Estate ("KS") in their own names. The Internet comments did not come from the Defendants and did not involve any threats to the Does. The news stories were unrelated to this case. And the Does expressly conceded that they did not fear reprisal from anyone associated with KS.

Against this backdrop, five judges properly rejected the Does' request for anonymity, ruling that, in this case, the vague, anonymous Internet comments and unrelated news stories do not meet the heavy burden required for an exception to usual rule that "the title of every complaint 'include the names of all the parties.'" *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000). The magistrate judge (Kurren, J.) and district judge (Seabright, J.) who initially considered the Does' request both sit in Honolulu and are closely familiar with the the relevant factual context. And the panel (Beezer, J., joined by Graber and Fisher, JJ.) properly determined that neither the magistrate judge nor the district judge abused his discretion in rejecting anonymity.

1

Unable to convince a single judge so far, the Does now seek this Court's *en banc* review, conjuring a supposed conflict between the panel's decision and this Court's decisions in *Advanced Textile*, 214 F.3d 1058, and *Planned Parenthood of Columbia/Willamette, Inc. v. American Coalition of Life Activists*, 290 F.3d 1058 (9th Cir. 2002) (*en banc*). This supposed conflict is non-existent. The magistrate judge, district judge, and panel all faithfully applied *Advanced Textile*, which established the relevant factors for evaluating plaintiffs' requests to proceed anonymously. And they all honored *Planned Parenthood*'s requirement that "threats" be considered in "light of their entire factual context, including the surrounding events and reaction of the listeners," 290 F.3d at 1075, even though this case involved no "threats" to the Does and thus is unrelated to *Planned Parenthood*.

Since there is no intracircuit conflict under FRAP 35(a)(1), and since the Does make no argument that their petition presents a question of exceptional importance under FRAP 35(a)(2), this case does not warrant *en banc* review. The record fully supports the panel's decision, and the Does are not entitled to have the evidence reweighed in the guise of *en banc* review.

2

## COUNTERSTATEMENT OF FACTS

### A.    Background

This case arises from the Does' stated ambition (ER299) to overturn this Court's *en banc* decision in *Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate*, 470 F.3d 827 (9th Cir. 2006) (*en banc*) ("*Doe I*"). "The Kamehameha Schools were created under a charitable testamentary trust established by the last direct descendent of King Kamehameha I, Princess Bernice Pauahi Bishop, who left her property in trust for a school dedicated to the education and upbringing of Native Hawaiians." *Id.* at 831.  To carry out its mission of improving the capability and well-being of Native Hawaiians through education, KS applies an admissions policy that gives a preference to Native Hawaiians in many of its educational programs.  SER118.  In *Doe I*, this Court upheld this policy against a challenge brought under 42 U.S.C. § 1981 by plaintiffs who were represented by the Does' lead counsel in the current action, Eric Grant.

While KS acceded to the plaintiffs' request for anonymity in *Doe I*, it declined to do so in the current case based on changed circumstances, including KS's recent experiences with non-Native Hawaiian students and its need to take third-party discovery regarding the Does' standing.  In particular, in the years after *Doe I* was filed, KS had successfully enrolled non-Native Hawaiian students Kalani Rosell (SER80-82) and Brayden Mohica-Cummings (who was admitted

3

after suing in his own name, again represented by Mr. Grant, SER83-85), and both of those students were welcomed at KS, suffering no threatened or actual harm despite the public controversy surrounding their admission. Mr. Grant himself stated in a televised interview that Mohica-Cummings was "doing great, he's enjoying himself, he's made a lot of friends and is fitting right in." SER86. And, in an interview shortly after his graduation in 2007, Mr. Rosell described the "close feeling of *ohana*, of family" at the school, where "[e]very teacher is like a parent or relative, and each student is like a brother or sister." SER80.

In objecting to plaintiffs' request to hide their identities in this case, KS was also aware of a host of other challenges to Native Hawaiian programs that had all been pursued in the district court in Hawai'i under the plaintiffs' real names without any actual or threatened harm. *See, e.g.*, *Rice v. Cayetano*, 528 U.S. 495 (2000); *Arakaki v. Lingle,* 477 F.3d 1048 (9th Cir. 2007); *Carroll v. Nakatani*, 342 F.3d 934 (9th Cir. 2003); *Arakaki v. Hawaii*, 314 F.3d 1091 (9th Cir. 2002).

### B.    The Does' Complaint And  Motion To Proceed Anonymously

The minor Does applied for admission to KS's K-12 campus program for the 2008-09 school year, but none was admitted. ER300. In August 2008, after being recruited by their counsel (SER93-101), the Does filed a complaint alleging that KS's admissions policies violate Section 1981. ER298-306.

The Does moved to proceed anonymously, contending that disclosing their identities would lead to retaliation by the public. They specifically denied any fear of "possible retaliation and ostracism at KS" by students, faculty, or staff. SER32c n.2. Instead, the Does based their motion on a few anonymous Internet comments that their counsel culled from various newspapers' websites (ER242-85), news articles about Rosell and Mohica-Cummings (ER218-23), and a few unrelated hate crimes in Hawai`i (ER224-36).

### C. The Decisions Below Rejecting Anonymity

#### 1. The Magistrate Judge's Decision

The magistrate judge denied the Does' motion to proceed anonymously in a comprehensive opinion addressing each *Advanced Textile* factor.[1] With respect to severity of harm, the magistrate judge ruled that "none of Plaintiffs' evidence shows any threat of physical harm or economic harm against Plaintiffs." ER40. Of the Internet comments plaintiffs submitted, the magistrate judge found that "only four [were] conceivably made against Plaintiffs" (ER39) and none was an actual threat: two addressed "how Plaintiffs might be treated if they are admitted to Defendants' school" (ER39)—a concern the Does themselves had disavowed—

---

[1] *Advanced Textile* instructs lower courts to evaluate: (1) "the severity of the threatened harm"; (2) "the reasonableness of the anonymous party's fears"; (3) "the anonymous party's vulnerability to such retaliation"; (4) "the precise prejudice at each stage of the proceedings to the opposing party"; and (5) "whether the public's interest in the case would be best served by requiring that the litigants reveal their identities." 214 F.3d at 1068.

and the other two merely "voice[d] the commentators' frustration with this lawsuit" (ER40 (citing ER276, 285)). The magistrate judge discounted public reaction against Mohica-Cummings' admission in 2002, noting that even the U.S. Attorney who urged public calm at the time (a warning one of Mohica-Cummings' own attorneys deemed "unnecessary" (SER84)) was "unaware of any credible threats." ER37. And the magistrate judge discounted news articles about hate crimes in Hawai`i as "not connected to any of the parties in this action, nor [involving] threats against anyone challenging Defendants' admissions policy." ER38.

As to the second *Advanced Textile* factor—reasonableness of the plaintiffs' fears—the magistrate judge concluded that, "without evidence of any threats of physical violence or economic harm against them, a reasonable person would not believe that Plaintiffs might be physically or financially threatened." ER41. The magistrate judge also discussed the remaining *Advanced Textile* factors, concluding that only the young age of some of the plaintiffs weighed in favor of anonymity. ER42-47. The magistrate judge then balanced the factors and ruled that the Does had not overcome "the presumption, firmly rooted in American law, of openness in judicial proceedings." ER49-50.

### 2.      The Magistrate Judge's Decision Denying Reconsideration

The Does moved for reconsideration after anonymous Internet comments were posted in response to the magistrate judge's ruling and the Does' well-known Hawai`i counsel received an email of unknown origin and allegedly received a threatening phone call.  The magistrate judge denied reconsideration in a written decision (ER20-29), explaining that the new Internet comments were "of the same character and nature as the evidence [he] previously considered and [were] no more probative of a severe threat of harm or a reasonable fear of harm" (ER26); none of the three anonymous Internet comments that the Does contended were directed toward them contained any threats (ER26-27); the anonymous email was not directed toward the Does (ER28); and the alleged anonymous phone call to the Does' counsel merely "voice[d] frustration with the lawsuit but [did] not show a severe threat of harm" (ER28).  Instead, as the magistrate judge noted, "Plaintiffs' evidence confirms that, under the cloak of anonymity, people will make outrageous, offensive, and even nonsensical statements."  ER28.

### 3.      The District Court's Decision Affirming The Magistrate Judge's Rulings

The Does appealed to the district court, disputing the magistrate judge's assessment of two *Advanced Textile* factors.  The district judge affirmed in a thorough, written decision.  ER1-19.  As to the severity of supposedly threatened harm, the district court concluded that the magistrate judge's "thorough analyses of

7

the evidence are not clearly erroneous or contrary to law," noting that the magistrate judge "went through each type of alleged threat in detail … and explained why the evidence did not indicate a threat of harm to Plaintiffs," including the evidence adduced after his initial decision. ER17.

As to the reasonableness of plaintiffs' fear of harm, the district court rejected the Does' apparent contention that the magistrate judge had failed to view the evidence through the eyes of a reasonable person in their position. ER18. Noting that the magistrate judge had explicitly followed the *Advanced Textile* framework, the district court concluded that, "[g]iven the absence of threats directed to Plaintiffs, no reasonable person in *any* position would believe a threat would be carried out." *Id.* Having been rebuffed by judges fully familiar with the community in which this dispute arose, the Does voluntarily dismissed their case, and this appeal followed.

### 4.    The Panel's Decision

On appeal, the panel unanimously affirmed the district court's decision, noting "the paramount importance of open courts" and reiterating that "the default presumption is that the plaintiffs will use their true names." *Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate*, 596 F.3d 1036, 1046 (9th Cir. 2010) ("*Doe II*"). Applying deferential abuse-of-discretion review and stressing that "[i]t is in the particular purview of the district court to view alleged threats in context and

8

determine what the 'reasonable' person in the plaintiffs' situation would fear," *id.* at 1044, the panel concluded that:

> (1) "[t]he magistrate judge correctly recognized that many times people say things anonymously on the internet that they would never say in another context and have no intention of carrying out";
>
> (2) "[t]he magistrate judge noted that plaintiffs had culled only a few comments out of hundreds of anonymous comments regarding this case";
>
> (3) the district court "correctly evaluated the [Does'] concession 'that they are not fearful of retaliation and ostracism at [KS] if and when they are admitted' in discounting the threats that the children would get 'lickins' everyday at school";
>
> (4) "Rosell and Mohica-Cummings both attended [KS] with no reported incidents—either at school or outside the school setting"; and
>
> (5) "Mohica-Cummings used his real name in litigation against [KS], and his counsel specifically stated that the U.S. Attorney's warnings to the public were unnecessary."

*Id.* at 1045. The panel held that the district court did not abuse its discretion in concluding that the public interest factor did not favor anonymity, "[g]iven the strong general presumption that plaintiffs will conduct litigation under their own names." *Id.* at 1043. And the panel concluded that the remaining factors— plaintiffs' vulnerability and prejudice to defendants—did not tip the balance toward anonymity. *Id.* at 1045.

## ARGUMENT

## I. THE PANEL'S DECISION DOES NOT CONFLICT WITH *ADVANCED TEXTILE*

After incorrectly asserting that the panel decision conflicts with *Advanced Textile* as to the applicable standard of review (Pet. 6-7), the petition quarrels with the panel's application of the concededly governing *Advanced Textile* factors (Pet. 7-14). Neither argument remotely warrants *en banc* review.

### A. The Panel Applied The Correct Standard Of Review

In *Advanced Textile*, this Court held that the abuse-of-discretion standard governs review of the district court's denial of a motion to proceed anonymously, explaining that reversal is appropriate only where the district court "relied on an erroneous view of the law, made a clearly erroneous assessment of the evidence, or struck an unreasonable balance of the relevant factors." 214 F.3d at 1069.

The Does contend that the panel failed to apply "the clearly-erroneous prong of this standard in considering the reasonableness of [their] fears" but instead applied the abuse-of-discretion standard. Pet. 7. This is not so. The panel applied the correct standard, expressly holding that "the district court did not abuse its discretion in refusing to allow anonymity because ***the district court did not clearly err*** in its conclusion that the [Does] do not reasonably fear severe harm." *Doe II*, 596 F.3d at 1042 (emphasis added); *see also id.* at 1043 ("***The district court did not clearly err*** in concluding that the [Does] do not reasonably fear severe harm.").

10

The panel thoroughly considered the evidence that the Does presented to the magistrate judge, and found that evidence insufficient to invalidate the district court's finding of no reasonable fear. *Id.* at 1044-45. The panel thus conducted the exact analysis that *Advanced Textile* requires, and the conflict the Does assert is illusory.

**B.  The Does' Factual Disagreement With The Panel's Application Of *Advanced Textile* Presents No Ground For *En Banc* Review**

In the bulk of their petition, the Does use cherry-picked excerpts from the record to distort the setting in which this case was filed and to rehash arguments already exhaustively considered and rejected by the magistrate judge, the district court, and the panel as a basis for anonymity.[2] Rehearing *en banc*, however, is not intended to provide disappointed litigants another level of review, and in any event, the record contradicts the Does' arguments.

**1.  Reasonable Fear**

While the adult Does' cookie-cutter declarations allege a variety of subjective alleged fears, none of the facts the Does rely upon supports any ***objectively*** reasonable fear of retaliation. *First*, while then-United States Attorney

---

[2]  The Does also misleadingly refer to the "panel's own description of [the] threats" (Pet. 3 (emphasis removed)), failing to note that the panel was merely summarizing *the Does'* arguments. *See Doe II*, 596 F.3d at 1040 (stating that "the [Does] *argued* that they reasonably fear physical injury if their identities are revealed") (emphasis added). The panel never found any basis—nor is there any— to question the lower court's determination that the Does' alleged anxieties are unreasonable.

11

Kubo did issue a purely precautionary warning, on the eve of Mohica-Cummings' admission to KS in 2003, that violence or threats of violence would violate federal law (Pet. 4), he also explained that he was "unaware of any credible threats" (ER222), and the record does not reflect that any such threats ever materialized. At the same time, one of Mohica-Cumming's own counsel specifically stated that Mr. Kubo's warnings were "unnecessary" (SER84), and the evidence is undisputed that neither Mohica-Cummings nor Rosell was ever harmed or threatened with harm on account of their enrollment at KS.

*Second*, while the plaintiff's mother in *Doe I* did assert that she feared harm if her identity was disclosed (ER241), such subjective and self-serving testimony is far too vague, general and conclusory to support the *Doe II* plaintiffs' arguments. *See, e.g.*, *Day v. Sebelius,* 227 F.R.D. 668, 677 (D. Kan. 2005) ("vague and conclusory allegations regarding … stigma and possible retribution" insufficient to justify anonymity); *Doe v. Texaco, Inc.*, 2006 WL 2850035, *5 (N.D. Cal. Oct. 5, 2006) (fears not "objectively reasonable" where plaintiffs' declarations were "identical in their content" and lacked evidence of specific threats).  And, in any event, she made that assertion in litigation over a controversial multi-million settlement she reportedly received from KS that gave her reasons for hiding her identity that are wholly irrelevant here.

12

*Third*, the record does not support the Does' inflammatory assertion that "[t]he past several years in Hawaii have witnessed an extraordinary number of 'violent crimes with racial overtones.'" Pet. 4. The Does offered inadmissible hearsay evidence regarding only *four* such incidents in Hawai`i over a period of *three years* as a result of "road rage" incidents and schoolyard altercations. ER225-36. The magistrate judge and the district judge—both familiar with the community in Hawai`i—found no merit in this argument about isolated incidents that had no connection to KS, its admissions policy, or this litigation. This Court has no basis to reject their assessments, and the Does' continued reliance on them in an attempt to portray pervasive animus against "*haoles*" in Hawai`i borders on offensive stereotyping of Native Hawaiians that this Court should not countenance.

*Fourth*, the Does misplace reliance on anonymous Internet comments (Pet. 4) that in fact contain no threat of harm directed at the Does. Two of the comments speculate about others' actions, suggesting, "if the plaintiffs were admitted to Kamehameha, they were 'jus gonna get lickins everyday'" and "if plaintiffs' 'haole attorneys continue doing this, one day they're gonna be targeted by some crazy Hawaiian or group of Hawaiians armed with baseball bats or guns." The panel explained that even a comment that, unlike these comments, is a threat on its face may be disregarded where the "context demonstrates frustration, a joke, or political commentary instead of a true intent to harm." *Doe II*, 596 F.3d at

13

1044. *A fortiori*, such comments may properly be discounted where, as here, they amount merely to "idle chatter about public attitudes towards the plaintiffs' claims" rather than "a direct threat to the plaintiffs or their family." *Doe v. Pleasant Valley Sch. Dist.,* 2007 WL 2234514, *3 (M.D. Pa. 2007).

Other comments the Does cite amount similarly to such "idle chatter" ("Good that the judge ordered them to make these little brats names known to the public, so they can be tormented by their fellow students and general public," "4 kids … will need 10 bodyguards lol," and "if their names were revealed, the plaintiffs would have to watch their backs for the rest of their lives!"), to nonsensical hyperbole ("Sacrifice them!!!!!!!!"), or to criticism of the Does' attorneys clearly made in jest ("now stringing up those scum lawyers is not such a bad idea … Don't be scared, it's in the Halloween spirit").[3]

Even taken together, these isolated Internet comments are a far cry from the severe threats the plaintiffs faced in *Advanced Textile*, where this Court permitted them to proceed anonymously. There, migrant garment workers from China were working in "sweat shops" in Saipan and sued for wage and hour violations under

---

[3] The Does' reliance on alleged "threats" to their counsel does not support the reasonableness of *their* fear. Pet. 5. Counsel's repeated efforts to inject themselves into the public eye regarding this case by writing newspaper editorials (SER93-101), participating in a well-publicized symposium about the first *Doe* case (SER102), and issuing a press release trumpeting the filing of this lawsuit (SER103) indicate that counsel themselves do not fear harm.

the Fair Labor Standards Act. This Court allowed anonymity in light of *evidence* establishing that the workers faced severe and "extraordinary" harm if their identities were exposed, including firing, immediate deportation, physical harm, and risk of arrest and imprisonment in China. *See* 214 F.3d at 1071. In sharp contrast, even if the Does were socially ostracized for their lawsuit (as Mr. Mohica-Cummings was not), "[t]he threat of hostile public reaction to a lawsuit, standing alone, will only with great rarity warrant public anonymity." *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981).

Thus, the Does' sensationalistic montage of isolated and anonymous Internet comments—comments characteristic of the bluster and overheated rhetoric that is the price of free speech in that forum—provides no basis to reconsider the four decisions of the magistrate judge, the district court and the panel, all of whom considered these comments in detail. As the panel correctly noted, "many times people say things anonymously on the internet that they would never say in another context and have no intention of carrying out." *Doe II*, 596 F.3d at 1045. There was thus ample basis for the district court's finding, affirmed by the panel, that the Does failed to meet their burden of proving objectively reasonable fears of severe harm.[4]

---

[4]    The Does' reliance on *D.C. v. R.R.*, 185 Cal. App. 4th 1190 (2010), is misplaced, as the Internet comment at issue there was much more severe and targeted than any here.

15

### 2. Public Interest

Similarly, the Does fail to justify (Pet. 12-15) rehearing *en banc* of the panel's ruling that the district court did not abuse its discretion in "weigh[ing] the arguments under the public-interest factor both for and against anonymity." *Doe II*, 596 F.3d at 1043. The panel soundly concluded that this case warrants no departure from "the strong general presumption that plaintiffs will conduct litigation under their own names." *Id.*

To begin with, the Does misconceive the burden of proof under *Advanced Textile*. They argue that "[u]npopular plaintiffs … should be permitted to proceed anonymously when threatened—unless there is good reason otherwise." Pet. 2. But *Advanced Textile* held, to the contrary, that a party may proceed anonymously only where its "need for anonymity **outweighs** prejudice to the opposing party and the public's interest in knowing the party's identity." 214 F.3d at 1068 (emphasis added). The Does offer no basis for reversing this presumption, and their voluntary and calculated decision to forego this suit based on objectively unreasonable fears cannot be bootstrapped into an argument that anonymity will serve the public interest by reviving their lawsuit.

Finally, contrary to the Does' intimations (Pet. 2, 14 & n.3), the fact that this Court and the Supreme Court have not commented on a plaintiff's anonymity in other lawsuits is both unsurprising and irrelevant. Courts address only those issues

16

that the parties raise, and the defendants in those cases did not object to the plaintiffs' anonymity.

The panel thus reviewed, under the correct standard, the routine application of the *Advanced Textile* factors to a particular factual record that the magistrate and district judges were well-positioned to assess, and no *en banc* review is warranted.

## II. THE PANEL'S DECISION DOES NOT CONFLICT WITH *PLANNED PARENTHOOD*

The petition also suggests in passing that the panel decision conflicts with "the contextual analysis called for by *Planned Parenthood*." Pet. 11. *Planned Parenthood* involved a First Amendment defense against allegations of true threats, and thus is at best tangential to the questions here. But, even assuming *Planned Parenthood* applies here, there is no conflict. As the district court recognized (ER17 n.9), the magistrate judge expressly considered the context of each comment upon which the Does relied by looking at both the forum in which the statement was made and the sentences surrounding the purported "threat." *See* ER26-28, 37-40. The panel likewise considered the context of the threats, including the acts of violence against non-Hawaiians, the U.S. Attorney's warning upon Mohica-Cumming's admission, the statement by Mohica-Cumming's attorney that the warning was unnecessary, the absence of violence against Mohica-Cummings or Rosell, the fact that the purported threats were contained in a handful of comments that were made anonymously on a newspaper's website in

17

response to an article about the lawsuit, and other commenters' reactions to the posts, and expressly cited *Planned Parenthood* in finding this context unavailing for plaintiffs' arguments. *Doe II*, 596 F.3d at 1044-45.

Moreover, contrary to the Does' assertion, neither the panel nor the district court nor the magistrate judge "*dismiss[ed]* documented threats because they were made 'anonymously on the internet.'" Pet. 9 (emphasis added). Rather, they considered the forum in which those statements were made as part of a contextual analysis of the reasonableness of the Does' purported fears, just as *Planned Parenthood* requires.[5]

The Does' contention that the panel failed to consider the context of the purported threats is thus incorrect, and rehearing *en banc* on this ground is not warranted.

---

[5]    *Poradisova v. Gonzales*, 420 F.3d 70 (2d Cir. 2005), an asylum case, is inapposite, as there the Second Circuit held that an immigration judge erred by giving no value to anonymous threatening calls made directly to an asylum seeker. *Id.* at 75, 80. General statements of frustration posted on newspapers' websites in response to articles are a far cry from anonymous threats made on a person's home phone.

Likewise, neither of the other two decisions upon which the Does rely has any relevance here. *See United States v. Sutcliffe*, 505 F.3d 944 (9th Cir. 2007) (affirming convictions where defendant made targeted threatening statements on his website); *United States v. Lincoln*, 403 F.3d 703, 706 (9th Cir. 2005) (reversing conviction because "no reasonable person could foresee that [a letter stating an unidentified "they" would kill the President] would be perceived by its recipient as a serious threat").

18

## **CONCLUSION**

The petition should be denied.

DATED:  May 5, 2010                     Respectfully submitted,

                                          **QUINN EMANUEL URQUHART
                                           & SULLIVAN, LLP**

                                   By s/ Kathleen M. Sullivan_____
                                      Kathleen M. Sullivan

Colleen I. Wong                              William B. Adams
KAMEHAMEHA SCHOOLS                 51 Madison Avenue, 22nd Floor
567 S. King Street, Suite 310          New York, NY  10010
Honolulu, HI 96813                 (212) 849-7000
(808) 523-6341

Paul Alston
Jason H. Kim
ALSTON HUNT FLOYD & ING
1001 Bishop Street, Suite 1800
Honolulu, HI  96813
(808) 524-1800

*Attorneys for Defendants-Appellees*

19

## **CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)(7)(C)**

Pursuant to Fed. R. App. P. 32(a)(7)(C), the attached response to a petition for rehearing en banc is proportionately spaced, has a typeface of 14 points or more and contains 4,199 words.


s/ Kathleen M. Sullivan_____          May 5, 2010\_\_\_\_
*Attorney for Defendants-Appellees*                                             Date

20

## <u>CERTIFICATE OF SERVICE</u>

I, Kathleen M. Sullivan, a member of the Bar of this Court, hereby certify that on May 5, 2010, I electronically filed the foregoing "Response to Petition for Rehearing En Banc" with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


s/ Kathleen M. Sullivan_____